IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA** :
:
: **CASE NO. 1:10-CR-00017-01**
**v.** :
:
**EDWARD JESUS-NUNEZ** :

# **M E M O R A N D U M**

On January 27, 2010, Defendant, Edward Jesus-Nunez was charged in a four-count indictment with (1) criminal conspiracy to distribute and possession with intent to distribute cocaine hydrochloride and cocaine base, in violation of 21 U.S.C. § 846; (2) criminal conspiracy to distribute and possession with intent to distribute marijuana, in violation of 21 U.S.C. § 846; (3) distribution and possession with intent to distribute cocaine hydrochloride and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2; and (4) use of a communication facility in committing a drug crime, in violation of 21 U.S.C. § 843(b). On January 29, 2010, Defendant pled not guilty to the charges in the indictment. On June 18, 2010, Defendant filed a motion to suppress evidence claiming the Government violated his Fourth Amendment rights by attaching and monitoring the movement of his vehicles on public thoroughfares via a magnetic Global Positioning System ("GPS"). (Doc 143.) The parties have briefed the motion, and it is ripe for disposition. For the reasons that follow, the court will deny Defendant's motion.

I.      **Background**

The following facts are taken from the parties' respective briefs. The federal Drug Enforcement Agency ("DEA"), Lebanon County Drug Task Force, Lebanon Police Department, Lebanon County District Attorney's Office, Internal Revenue Service, United States Postal Service, and the Pennsylvania State Police began an investigation into Defendant's drug-trafficking activity in late 2008.

The Government asserts that from the time the investigation began until February 9, 2009, investigators gathered information from several confidential sources that Defendant was a large scale supplier of drugs, and that he supplied drug dealers in Lebanon, Pennsylvania, and elsewhere with crack-cocaine and marijuana. According to the Government, some of these sources also told investigators that Defendant had personally sold them crack-cocaine and/or marijuana. In addition, visual surveillance conducted by investigators witnessed Defendant engaging in numerous transactions in which they firmly suspected he was selling or buying crack-cocaine or marijuana.

On February 9, 2009, DEA Special Agent Joseph Myers attached a magnetic GPS device to the underside of the rear bumper of Defendant's Mercedes Benz, which was parked on a public street outside of Defendant's apartment. In March 2009, Special Agent Myers attached a separate magnetic GPS device to the underside of the rear bumper of Defendant's Honda Accord, which was also parked on a public street outside of Defendant's apartment. The magnetic GPS devices were not hard-wired into either car, and did not interfere with Defendant's use of either vehicle. From the time that these GPS devices were attached until Defendant's arrest on January 22, 2010, investigators used the GPS devices to track the movement of

Defendant's vehicles. According to the GPS report, there were 4,307 registered stops. The only thing that the GPS device tracked was the date, time, and precise location of each stop; information that could have been obtained by 24-hour visual surveillance of Defendant's vehicles.

On several occasions during the eleven plus months that the GPS devices were attached, Special Agent Myers briefly removed the magnetic GPS devices from the underside of the rear bumpers of Defendant's vehicles to change the batteries and then re-attached them to the underside of the rear bumpers of Defendant's vehicles. Every time Special Agent Myers changed the batteries of the GPS devices, he did so when the vehicles were parked on a public street.

**II.     Discussion**

Defendant argues that the Government infringed upon his Fourth Amendment rights by tracking the movements of his vehicles with the GPS devices for an extended period of time without first obtaining a warrant or having probable cause to do so. Defendant does not argue that the mere act of placing the GPS device on the undercarriage of his cars constituted an unreasonable search and seizure. Thus, the court confines its analysis simply to whether the Government's conduct of using a GPS device to track the movement of Defendant's vehicles for nearly a year without first obtaining a warrant violates Defendant's Fourth Amendment rights.

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. CONST. amend. IV. Although it is not entirely clear from his brief, it appears that Defendant argues that the GPS tracking device constituted an unreasonable search under the Fourth Amendment as opposed to an unreasonable

seizure. Defendant does not argue that the GPS device in any way interfered with his possessory interest in his vehicles such that they affected the cars' performance or Defendant's ability to drive them whenever and where he wanted, which is the test for whether a Fourth Amendment seizure occurred. *See United States v. Karo*, 468 U.S. 705, 712-713 (1984) ("A 'seizure' occurs when there is some meaningful interference with an individual's possessory interests in [the] property.") (internal citations omitted).

Whether a search violates the Fourth Amendment embraces two discrete questions: (1) whether the individual has exhibited an actual, subjective expectation of privacy; and (2) whether the individual's expectation of privacy is one that society recognizes as reasonable. *See Katz. v. United States*, 389 U.S. 347, 361 (1967). From the court's review of the case law, Defendant loses on both accounts.

Defendant candidly acknowledges the applicability of *United States v. Knotts*, 460 U.S. 276 (1983). In *Knotts*, a beeper was placed inside a five-gallon container of chloroform, then sold by a Minneapolis chemical company to a co-defendant, who then delivered it to another individual who later delivered it to the defendant's cabin nearly 100 miles away in rural Wisconsin. *Id.* at 278. The government used the beeper to track the movement of the container as it traveled. The defendant filed a motion to suppress arguing that the warrantless installation of the beeper violated his Fourth Amendment rights. The district court denied his suppression motion, and the defendant was convicted at trial. *Id.* at 279. A divided panel of the Eighth Circuit reversed the conviction, finding that the monitoring of the beeper was prohibited by the Fourth Amendment because its use had violated the defendant's reasonable expectation of privacy, and that all of the information derived

after the location of the cabin was a result of the illegal beeper monitoring. *Id.* The Supreme Court disagreed and reversed the Eighth Circuit. In so doing, it reasoned as follows:

> The governmental surveillance conducted by means of the beeper in this case amounted principally to the following of an automobile on public streets and highways. We have commented more than once on the diminished expectation of privacy in an automobile.
>
> . . .
>
> A person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another. When [the co-defendant] travelled over the public streets he voluntarily conveyed to anyone who wanted to look the fact that he was travelling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination when he exited from public roads onto private property.
>
> . . .
>
> Visual surveillance from public places along [the co-defendant's] route or adjoining [the defendant's] premises would have sufficed to reveal all of these facts to the police. The fact that the officers in this case relied not only on visual surveillance, but on the use of the beeper to signal the presence of [the co-defendant's] automobile to the police receiver, does not alter the situation. Nothing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case.

*Id.* at 281-282 (internal citations omitted).

It is difficult for the court to see how the reasoning in *Knotts* is not directly on point. When Defendant drove his car from place to place he voluntarily let it be known to anyone who wanted to follow him the fact that he was driving on certain roads at particular times and that he made stops along the way. Anyone who

5

followed Defendant could have timed how long it took him to arrive at his destinations, how long he stayed there, and the nature of the places that he visited, i.e, church, casinos, strip clubs, etc. Certainly, the police would not have needed a warrant or even particularized suspicion to observe where Defendant drove his car on public roads. The GPS report attached to Defendant's motion to suppress shows no more information than what the Government could have obtained by visual surveillance.

The fact that the GPS device allowed the Government to overcome the impracticality of 24-hour visual surveillance is irrelevant. It has long been established that sense enhancement devices, to the extent that they do not reveal more than could have been observed by the naked eye, are permissible. *See e.g. United States v. Dunn*, 480 U.S. 294 (1987) (no search where the government uses a flashlight to look into a barn located in an open field); *Dow Chemical Co. v. United States,* 476 U.S. 227 (1986) (use of a telescope to look into curtilage of business from lawful vantage point, not a search); *California v. Ciraolo*, 476 U.S. 207 (1986) (no search where police flying at an altitude of 1000 feet observed marijuana plants growing in the defendant's backyard that was obstructed by a 10-foot fence); *Texas v. Brown*, 460 U.S. 705 (1983) (no search where the police use a flashlight to look into a car). Here, the GPS device attached to Defendant's cars revealed nothing more than what anyone, including the Government, could have observed with the naked eye had they been following the Defendant.

Thus, the facts in this case are unlike the Supreme Court's decision in *Kyllo v. United States*, 533 U.S. 27 (2001). In *Kyllo*, the Supreme Court found that the government's use of a thermal imaging device to determine the activity of

persons inside a home constituted a search within the meaning of the Fourth Amendment. *Id.* at 34. While this decision was based in large part on the fact that the intrusion was into the defendant's home—a place that goes to the "very core of the Fourth Amendment"—it was also grounded in the fact that the thermal imaging device, unlike binoculars or telephoto lens, was "sense enhancing technology" that allowed the Government to obtain information regarding the interior of the home "that could not otherwise have been obtained without physical intrusion into a constitutionally protected area." *Id.* Again, no such extra-sensory enhancements are implicated here; the GPS device simply made the Government more efficient, and the Fourth Amendment has never been interpreted to equate efficiency with unconstitutionality.

Defendant argues that the duration of the observation in this case takes it outside of the ordinary enhanced senses case and turns it into something more. Specifically, Defendant states:

> In Mr. Jesus-Nunez' case . . . law enforcement tracked every movement of the car for 11 months . . . the GPS captured 4,307 stops, only a few of the stops were pertinent to the investigation, law enforcement would not have been able to visually track the vehicle for 11 months, 4,307 stops, and record past information generated by the GPS. Given current technology, the use of the GPS tracking devices can invade every aspect of an individual's expectation of privacy, even in his vehicle.

(Def.'s Br. in Supp. of Mot. to Suppress at 10, Doc. 144.)

The court shares Defendant's concern for the duration of the GPS tracking, and agrees that it is highly improbable that the Government could have maintained 24-hour visual surveillance for this length of time. The court also recognizes that in *Knotts*, the Supreme Court commented about the very concern

7

raised by Defendant—that the court's decision will mean that twenty-four hour surveillance of any citizen of this country will be possible without judicial knowledge or supervision—it stated: " [I]f such dragnet type law enforcement practices as [Defendant] envisions should eventually occur, there will be time enough then to determine whether different constitutional principles may be applicable." *Knotts,* 460 U.S. at 284. However, the court does not believe that it is in the position to rewrite constitutional principles long established by the Supreme Court because of the changing landscape of technology. This is the province either of Congress or the higher courts; it is this court's duty to apply precedent to the facts.

Here, the facts suggest that law enforcement officials obtained no more information than they otherwise could have gotten from visual surveillance. The use of the GPS device merely extended the duration of the Government's ability to observe that which Defendant otherwise made publically known: his travel on public roads, the places he visited, the duration of those visits, and the frequency of those visits. Accordingly, no Fourth Amendment rights are implicated by the Government's use of the GPS device.

Since there was no Fourth Amendment search or seizure by the Government's use of the GPS device, the court finds that the agents did not need probable cause or even reasonable suspicion to attach and monitor the device to Defendant's cars. Nonetheless, even if such individualized suspicion were required, the court finds that the Government had the required suspicion necessary to install the GPS.

The Government asserts that from the time the investigation began until February 9, 2009, investigators had gathered information from several confidential sources that Defendant was a large scale supplier of drugs, and that he supplied drug dealers in Lebanon, Pennsylvania, and elsewhere with crack-cocaine and marijuana. According to the Government, some of these sources also told investigators that Defendant had personally sold them crack-cocaine and/or marijuana. In addition, visual surveillance conducted by investigators witnessed Defendant engaging in numerous transactions in which they firmly suspected he was selling or buying crack-cocaine or marijuana. These facts provide a reasonable, particularized basis for law enforcement to attach a GPS monitoring device to Defendant's cars.

**III.      Conclusion**

For these reasons, consistent with the Supreme Court's reasoning in *Knotts*, the court finds that the Government's conduct in attaching a GPS device to Defendant's vehicles does not constitute a search under the Fourth Amendment. Accordingly, the court will deny Defendant's motion to suppress.

s/Sylvia H. Rambo
United States District Judge

Dated: July 27, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA** :
:
: **CASE NO. 1:10-CR-00017-01**
**v.** :
:
**EDWARD JESUS-NUNEZ** :
:

## **O R D E R**

In accordance with the attached memorandum of law, Defendant's motion to suppress (Doc. 143) is **DENIED**.

                                                          s/Sylvia H. Rambo
                                                          United States District Judge

Dated: July 27, 2010.