IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:10-CR-017-01** |
| | : | |
| **v.** | : | |
| | : | |
| **EDWARD JESUS-NUNEZ** | : | **(Judge Sylvia H. Rambo)** |

## M E M O R A N D U M

Before the court is a motion to vacate, set aside, or correct sentence filed by Defendant Edward Jesus-Nunez ("Nunez") pursuant to 28 U.S.C. § 2255. (Doc. 424.) Defendant raises issues of ineffective assistance of counsel as to the following: (1) failing to adequately investigate and apprise Nunez prior to his guilty plea of the change in law regarding GPS surveillance, (2) failing to protect and pursue Nunez's right to challenge GPS evidence, and (3) failing to object to alleged Rule 11 violations. The matter is ripe for disposition. For the reasons set forth below, the court will deny Defendant's motion.

## I.        **Background**

On January 27, 2012, Defendant was indicted and charged with conspiracy to distribute and possession with intent to distribute 5 kilograms and more of cocaine hydrochloride and 50 grams or more of crack cocaine (Count I), conspiracy to distribute and possession with intent to distribute marijuana (Count II), distribution and possession with intent to distribute cocaine hydrochloride and cocaine base (Count III), and use of a communication facility in furtherance of drug

trafficking (Count IV). (Doc. 18.) The court appointed Lori J. Ulrich, Esquire, of the Federal Public Defender's Office, to represent Nunez in this matter. (Doc. 13.) On January 29, 2010, Nunez appeared before now retired Magistrate Judge Smyser and entered a not guilty plea. (Doc. 54.)

On June 18, 2010, Attorney Ulrich, on behalf of Nunez, filed a motion to suppress physical evidence derived from a GPS tracking device. (Doc. 143.) Following consideration of the parties' briefs on the matter, the court denied Nunez's motion by memorandum and order dated July 27, 2010. (Doc. 183.)

On November 4, 2010, due to an apparent breakdown in the attorney-client relationship, Attorney Ulrich filed an unopposed motion to withdraw as attorney and for appointment of new counsel. (Doc. 233.) On November 5, 2010, the court granted Attorney Ulrich's motion to withdraw (Doc. 234), and on November 22, 2010, the court appointed Donald F. Martino, Esquire, to represent Nunez. (Doc. 240.)[1] Attorney Martino did not file any additional substantive motions on behalf of Nunez.

On February 22, 2011, Nunez pled guilty to Count II of the superseding indictment[2] pursuant to a written Rule 11(c)(1)(C) plea agreement which contained, *inter alia*, a 15-year term of imprisonment ("15-year plea agreement"). (*See* Docs. 278 & 279.) At the time of Nunez's guilty plea, the court questioned him under oath to assure he understood his sentence. Nunez stated that he understood the plea

---

[1] Attorney Dennis E. Boyle briefly represented Nunez from November 5, 2010 to November 17, 2010. (*See* Docs. 234, 239 & 240.) Attorney Boyle is not a subject of Defendant's pending 2255 motion. Attorneys Ulrich and Martino will be referred to collectively as "trial counsel."

[2] A superseding indictment was returned on July 7, 2010, which contained the same counts as the original indictment as to Nunez. (Doc. 152.)

agreement and was in agreement with the Government's description of his role in the offense, and that he entered the plea of guilty free from undue influence.

By email dated May 12, 2011, the court notified Attorney Martino and Assistant United States Attorney ("AUSA") Daryl F. Bloom of its concerns regarding the 15-year plea agreement. (*See* Government ("Gov.") Ex. 1.) Although the court did not formally reject the plea agreement, it indicated its reluctance to accept the terms of the plea agreement. (*See id.*) By letter dated June 13, 2011, Nunez requested that the court refrain from formally rejecting the plea until after an evidentiary hearing on drug weights, guns, and leadership role is held. (*See* Doc. 316.). The court granted this request and held an evidentiary hearing on August 15, 2011. (*See* Doc. 321.) On June 28, 2011, the court held a brief conference call wherein counsel informed the court that the parties will attempt to renegotiate the plea agreement. During the August 15, 2011 evidentiary hearing, Attorney Martino advised AUSA Bloom that Nunez agreed to withdraw his objections to the pre-sentence report and accept a plea agreement containing a term of imprisonment of 20 years ("20-year plea agreement") provided that he would be sentenced that same day. The court questioned Nunez as to the new plea agreement, and, at Nunez's request, immediately proceeded to sentencing. Pursuant to the negotiated plea agreement, Nunez was sentenced to a term of imprisonment of 20 years. (Doc. 327.)

On June 26, 2012, Nunez filed a *pro se* motion to vacate his sentence pursuant to 28 U.S.C. § 2255, (Doc. 398), to which the Government responded on July 31, 2012 (Doc. 408). On September 10, 2012, the court appointed Edward J. Rymsza, Esquire, to represent Nunez in connection to his 2255 motion. (Doc. 411.) On November 20, 2012, Attorney Rymsza filed an amended/supplemental motion to

vacate sentence pursuant to 28 U.S.C. § 2255 and brief in support.[3] (Docs. 424 & 425.) The Government did not supplement its response. A hearing on Defendant's motion was held on December 11, 2012 ("2255 hearing"). The court ordered supplemental post-hearing briefing, the last of which was filed on January 7, 2013. (Docs. 435, 436, & 437.) The matter is now ripe for disposition.

## II.      Legal Standard

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish that (1) the performance of trial counsel fell below an objective standard of reasonableness, and (2) the performance of counsel unfairly prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88, 691 (1984). "Both *Strickland* prongs must be satisfied." *George v. Sively*, 254 F.3d 438, 443 (3d Cir. 2001) (citing *United States v. Nino*, 878 F.2d 101, 104 (3d Cir. 1989)).

The first *Strickland* prong requires a defendant to "establish . . . that counsel's performance was deficient." *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001.) Proving a deficiency in conduct "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed defendant by the Sixth Amendment." *Id.* (quoting *Strickland*, 466 U.S. at 687). "In assessing counsel's performance, 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Id.*

---

[3] The court has reviewed Defendant's *pro se* motion and Defendant's amended/supplemental motion. Because all properly made arguments in the *pro se* motion are subsumed within the amended/supplemental motion, the court will only address the arguments as they are raised in the amended/supplemental motion.

"Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is to say, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. It is well-settled that the benchmark for judging any claim of ineffectiveness of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*

The second prong of *Strickland* requires a defendant to show that counsel's performance unfairly prejudiced the defendant, meaning that counsel's errors were so serious as to deprive the defendant of a trial whose result is reliable. *Id.* at 687. It is not enough to show that the error had some conceivable effect on the outcome of the proceeding, for virtually every act or omission would meet such a test. *Id.* at 693. Rather, the defendant must show there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is sufficient to undermine confidence in the outcome of the trial. *Id.* Effectiveness of counsel applies to advice given by counsel during guilty plea discussions. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *United States v. Booth*, 432 F.3d 542, 547 (3d Cir. 2005).

## III.        Discussion

With the above precepts in mind, the court will address each of Nunez's claims *ad seriatim.*

5

### a.   GPS Evidence

Nunez's argument regarding GPS evidence is two-fold.  First, Nunez argues that trial counsel was ineffective for failing to adequately investigate and apprise Nunez prior to his guilty plea of the recent change in case law regarding GPS surveillance.  Second, Nunez argues that trial counsel was ineffective for failing to protect and pursue Nunez's right to challenge the GPS evidence in the future.

Nunez's arguments concerning GPS evidence arise from recent jurisprudence changing Fourth Amendment search and seizure requirements related to warrantless GPS surveillance, holding that information obtained by warrantless GPS monitoring is inadmissible.  Specifically, Nunez's first argument is centered on two recent cases that hold warrantless GPS evidence inadmissible: (1) *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010) ("*Maynard*"); and (2) *United States v. Jones*, 132 S. Ct. 945 (2012) ("*Jones*").  As explained in *Maynard*, the concern surrounding GPS evidence is that:

> Prolonged surveillance reveals types of information not revealed by short-term surveillance, such as what a person does repeatedly, what he does not do, and what he does ensemble.  These types of information can each reveal more about a person than does any individual trip viewed in isolation.  Repeated visits to a church, a gym, a bar, or a bookie tell a story not told by a single visit, as does one's not visiting any of these places over the course of a month.  The sequence of a person's movements can reveal still more; a single trip to a gynecologist's office tells little about a woman, but that trip followed a few weeks later by a visit to a baby supply store tells a different story.  A person who knows all of another's travels can deduce whether he is a weekly church goer, a heavy drinker, a regular at the gym, an unfaithful husband, an outpatient receiving medical treatment, an associate of particular individuals or political groups -- and not just one such fact about a person, but all such facts.

*Maynard*, 615 F.3d at 562.

Nunez's motion to suppress was denied, however, because binding case law at the time indicated that the use of GPS devices was constitutionally permissible under the circumstances presented here. *See, e.g., United States v. Knotts*, 460 U.S. 276 (1983) (finding that the introduction of evidence from a beeper that indicated the location of a container did not violate the Fourth Amendment because police followed the container on public roads where there was a diminished expectation of privacy and the evidence merely augmented visual surveillance). The decision in *Maynard* was not issued until nine days *after* the court's July 27, 2010 memorandum and order denying Defendant's motion to suppress. In any event, *Maynard* is not binding on this court. Indeed, Nunez concedes that, at the time the suppression motion was filed and subsequently decided, there was no Third Circuit opinion regarding the legality of the warrantless installation of a GPS device by law enforcement. (Doc. 425, p. 12 (citing *United States v. Katzin*, 2012 WL 1646894, *1 n.6, n. 14 (E.D. Pa. May 9, 2012).)

It is well-settled that a court, when facing a Section 2255 motion for ineffective assistance of counsel, must evaluate the alleged conduct from counsel's perspective *at the time*. *See Jermyn*, 266 F.3d at 282. Notably, the Sixth Amendment "does not require counsel for a criminal defendant to be clairvoyant." *United States v. Golden*, 255 F. App'x 319, 323 (10th Cir. 2007) (citing *United States v. Harms*, 371 F.3d 1208, 1212 (10th Cir. 2004)); *see also United States v. Gonzales-Lerma*, 71 F.3d 1537, 1542 (10th Cir. 1995) ("Counsel's assistance is not ineffective simply because counsel fails to base its decisions on law that might be passed in the future."). It follows that Attorney Ulrich could not be expected to

predict that future case law would find that the use of warrantless GPS evidence, such as the type used here, violated the Fourth Amendment. At the 2255 hearing, Attorney Ulrich testified that she was aware that "favorable case law was coming down" and further that she "knew it was a good issue." (Doc. 433, Notes of Transcript ("Tr."), 8.) Under these circumstances, the court finds that Attorney Ulrich's conduct relating to the filing of the motion to suppress was reasonable. However, the gist of Nunez's motion is not that trial counsel failed to successfully suppress the GPS evidence, but that counsel (1) failed to properly advise Defendant of ongoing developments in this area of law, and (2) failed to preserve Nunez's right to subsequently challenge the GPS evidence by filing a motion for reconsideration, or proposing a conditional plea or "stipulated-facts" trial. Here again, these arguments fail.

As to the first part of his argument, Nunez asserts that, had he been properly informed about the pending decision in *Jones*, he would not have pled guilty. *Jones* was not decided until January 23, 2012, more than five months *after* Nunez was sentenced. Thus, Nunez's argument appears to be that, had he known that the Supreme Court granted certiorari on *Maynard*, he would not have pled guilty. The court is unconvinced. First, although it is not clear the extent to which *Jones* was discussed between Nunez and his trial counsel, the record is clear that Attorney Ulrich, who filed the motion to suppress the GPS evidence, made Nunez aware of this emergent issue and that Attorney Martino subsequently discussed the *Maynard* opinion and the GPS evidence with Nunez on multiple occasions. (*See* Tr.

8

6, 8, 29-31.) Thus, suffice to say, Nunez was aware of the emerging law in this area.[4]

Additionally, Nunez fails to satisfy the second prong of the *Strickland* test, which requires that he show that, but-for trial counsel's alleged error in not properly advising him of the pending decision in *Jones*, the outcome of the proceeding would have been different. In this case, judgment was entered against Nunez pursuant to a binding plea agreement. In *Hill v. Lockhart*, the Supreme Court stated:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of the trial.

---

[4] At the 2255 hearing, Attorney Martino testified as follows:

[Nunez] knew about [decisions regarding GPS evidence] before I did because he knew more about his case the first time I met him. So he mentioned that there was an issue and that had – and that it was on appeal and there had been a favorable decision or something to that effect. I then researched it. We talked about it again the second time I met with him. That discussion was more along the lines of, you know, there's a lot of other evidence that doesn't really relate to the GPS. I then recall talking to him again about it after Her Honor informed us that she was likely to reject the plea agreement. And we talked about it some more. At that point I remember it coming up that it was still on appeal. We had talked about the odds of success, things that you talk about when a case is on appeal.

(Tr. 52-53.)

9

474 U.S. at 59. Thus, Nunez must show that, but-for trial counsels' failure to alert him of the pending decision in *Jones*, he would have insisted on going to trial based on his assessment of likelihood of success at trial. However, Nunez's decision to plead guilty appears completely unrelated to the pending *Jones* decision. Rather, Nunez decided to plead guilty after he and Attorney Martino discussed that the GPS evidence was not particularly significant to this case. (Tr. 29-31.) Attorney Martino met with AUSA Bloom and Eric Shuffelbottom, the special agent with the United States Drug Enforcement Administration assigned to this case, wherein the Government outlined the evidence against Nunez. (Tr. 31-32.) At the 2255 hearing, Agent Shuffelbottom testified that, aside from the GPS evidence, there was also visual surveillance, wiretaps, undercover purchases, recordings from undercover meetings involving Nunez, and hidden pole camera recordings. (Tr. 153.) It was after this array of evidence was revealed to Attorney Martino that Nunez pled guilty. (Tr. 31.) Although Nunez testified that he believed that the GPS evidence "made a big difference" because "the only way they got to the garage was through the GPS" (Tr. 103), this point is contradicted by Attorney Martino's and Agent Shuffelbottom's testimony, which this court finds credible. In fact, the record shows that even without the information obtained through GPS tracking, there is a significant amount of evidence that would have supported a conviction. Attorney Martino and Nunez were aware of this. Thus, assuming *arguendo* that trial counsel did not properly advise him of the recent developments in the law of GPS surveillance, Nunez has failed to show that, had he been properly advised of those developments, he would have insisted on trial. Accordingly, Nunez has failed to show that he was prejudiced by trial counsel's alleged deficient performance.

Nunez next argues that trial counsel did nothing to protect and preserve his right to subsequently challenge the admissibility of GPS evidence. Nunez suggests that defense counsel should have filed a motion for reconsideration of the court's denial of his suppression motion or pursued a conditional guilty plea that would preserve his right to appeal the adverse ruling on the suppression motion. Nunez also suggests that defense counsel should have requested a continuance of his guilty plea and sentencing in order to "wait out" the Supreme Court's decision in *Jones*. Lastly, Nunez contends that counsel should have secured a perfunctory case-stated or stipulated-facts trial to preserve the GPS issue. For the following reasons, these arguments are without merit.

Neither Attorney Ulrich nor Attorney Martino pursued these alternatives. However, Defendant has failed to overcome the "strong presumption" set forth in the first prong of the *Strickland* test that trial counsel's reasoning to refrain from filing a motion for reconsideration "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. At the 2255 hearing, Attorney Ulrich stated she abstained from filing a motion for reconsideration because (1) she was not aware of any criminal rule that permitted reconsideration in this instance, (2) *Maynard* had no binding effect on this court, and (3) the issue was a good issue for appeal. The court has no trouble finding that Attorney Ulrich's decision to refrain from filing a motion to reconsider was sound trial strategy and reasonable under the circumstances.

The same could be said of Attorney Martino, who also refrained from filing a motion for reconsideration. Attorney Martino testified at the 2255 hearing that, upon entering this case, he reviewed the *Maynard* decision and discussed the

GPS issue and pending litigation with Nunez. (Tr. 29.) He and Nunez discussed that the GPS evidence was not particularly significant to this case. (Tr. 29-31.) As stated, Attorney Martino met with AUSA Bloom and Special Agent Eric Shuffelbottom wherein the Government outlined the evidence against Nunez. (Tr. 31-32.) Following that meeting, Nunez conveyed his decision to plead guilty pursuant to the terms of the 15-year plea agreement. (Tr. 31.) Attorney Martino did not file a motion for reconsideration of the court's denial of the suppression motion in light of Nunez's decision to enter into a guilty plea and the determination that the GPS evidence was not significant. (*Id.*) Here again, the court finds that this decision was reasonable under the circumstances and Nunez has failed to dislodge the strong presumption that this constituted reasoned trial strategy. Like Attorney Ulrich, Attorney Martino had an appropriate legal basis for not filing a motion for reconsideration and the decision to not file for reconsideration certainly did not undermine the proper function of the adversarial process.

As to the other options that were not pursued by trial counsel, Attorney Martino testified that although he negotiated with AUSA Bloom regarding an appellate waiver and a 2255 waiver, he never specifically discussed a conditional plea or a case stated or stipulated facts trial. When pressed as to why those options were not pursued, he stated it was because "Mr. Nunez had decided at that point he wanted to plead guilty." (Tr. 36.) It is reasonable that trial counsel would not discuss a fact-stipulated trial, or any other trial-related matter, where Nunez indicated his intent to plead guilty. Moreover, it is understandable that trial counsel did not request a continuance because, as explained further below, Nunez decided to accept a plea agreement during the course of an evidentiary hearing and insisted that

he be sentenced that same day. Thus, a continuance would have been contrary to Nunez's wishes of a same-day sentencing. Although options such as a conditional plea may have been plausible under the circumstances, the decision not to pursue such an option does not satisfy the *Strickland* test because there is neither evidence that said decision fell below an objective standard of reasonableness nor any indication that Nunez had been prejudiced by this decision. The failure to obtain a conditional plea is not the type of error that would have caused Nunez to insist on proceeding to trial. Rather, a conditional plea merely would have preserved his right to subsequently challenge the GPS evidence. However, as previously discussed, nothing on the record suggests that the GPS evidence was key evidence and, even if it had it been suppressed, Nunez has failed to establish that he would have succeeded at trial. Accordingly, these arguments lack merit.

In short, none of the actions of either Attorney Ulrich or Attorney Martino are the type of "unprofessional errors" that warrant the granting of a 2255 motion for ineffective assistance of counsel. To the contrary, the court finds the actions of counsel were strategically reasonable under the circumstances and, in any event, did not prejudice Nunez in any discernable way.

The final issue regarding GPS evidence that the court must address is whether the Supreme Court's decision in *Jones* should be applied retroactively. Prior to *Jones,* settled precedent permitted the installation and monitoring of GPS devices under the facts implicated here. *See, e.g., Knotts*, 460 U.S. 276. Thus, the *Jones* decision represents a shift in case law akin to a new constitutional rule of criminal procedure. The court ordered the parties to brief this issue. (*See* Docs.

435, 436, & 437.) For the following reasons, the court finds that *Jones* should not be applied retroactively.

In *Teague v. Lane*, 489 U.S. 288, 310 (1989), the Supreme Court unequivocally held that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announce." *Teague* provided two exceptions to the general rule: (1) if the new rule places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" and (2) if the new rule "alter[s] our understanding of the bedrock procedural elements that must be found to vitiate the fairness of a particular conviction." *Id.* at 311 (internal quotations omitted.) "Bedrock procedural elements" are those rules that are "central to an accurate determination of innocence or guilt." *Id.* at 313.

The first exception is not applicable here because the *Jones* rule, requiring police to have a warrant prior to attaching a GPS unit to a suspect's vehicle, does not place private conduct outside the scope of police power. Moreover, *Jones* does not alter a "bedrock procedural element" because the warrant requirement for GPS tracking is not central to the determination of innocence or guilt. Thus, the court concludes that the holding in *Jones* is not retroactively applicable to this case. This conclusion is in accordance with the few federal courts that have considered this issue. *See, e.g., Reyes-Sotero v. United States*, 2012 U.S. Dist. LEXIS 181274, *5-6 (D. Md. Dec. 21, 2012); *Garcia v. Bradt*, 2012 U.S. Dist. LEXIS 102075, *12 (S.D.N.Y. July 23, 2012); *United States v. Reyes*, 2012 U.S. Dist. LEXIS 134866, *17-18 (S.D. Cal. Sept. 19, 2012) (quoting *Garcia*); *see also United States v. Martinez*, 2012 U.S. Dist. LEXIS 48569, *12-14 (E.D. Cal. April 5,

2012) (finding *Jones* does not apply retroactively, quoting *Davis v. United States*, 131 S. Ct. 2419 (2011) ("searches conducted in objectively reasonable reliance on binding appellate precedent [that is later overruled] are not subject to the exclusionary rule . . . [b]ecause suppression would do nothing to deter police misconduct in [those] circumstances.")).

### b. Alleged Rule 11 violations

Defendant next argues that trial counsel was ineffective for failing to object to several Rule 11 violations allegedly committed by the court. Specifically, Defendant argues that the court (1) did not advise Nunez in open court and on the record that the court had rejected the 15-year plea agreement, (2) did not advise Nunez in open court and on the record of its reasons for rejecting the 15-year plea agreement, (3) never allowed Nunez the opportunity to withdraw his plea, and (4) that the court improperly advised the parties that a 20-year plea agreement would be acceptable to the court.

Federal Rule of Criminal Procedure 11(c)(1) permits an attorney for the government to discuss and reach a plea agreement with defense counsel. Fed. R. Crim. P. 11(c)(1). The rule, however, specifically prohibits the court's participation in these proceedings. *Id.* Rule 11(c)(1)'s prohibition of judicial involvement in plea negotiations is a "bright line" rule, with no exceptions. *United States v. Ebel*, 299 F.2d 187, 191 (3d Cir. 2002) (citing *United States v. Bruce*, 976 F.2d 552, 556 (9th Cir. 1992) ("The unambiguous mandate of Rule 11 prohibits the participation of the judge in plea negotiations under *any* circumstances: it is a rule that . . . admits of no exceptions.") (emphasis in original)). The rule is based on a recognition that a judge's power over an accused makes his or her participation in plea negotiations

inherently coercive. *See Ebel*, 299 F.2d at 191. "A coerced plea would not only violate a defendant's constitutional rights, it would also increase the chance of convicting the innocent." *Id.* (citing *Bruce*, 976 F.2d at 556). Accordingly, "prior to any agreement by the parties, 'a court should not offer comments touching upon proposed or possible plea agreements,' which go beyond a source of information to plea negotiators and amount to 'indications of what the judge will accept' and 'will quickly become the focal point of further discussions.'" *United States v. Davila*, 664 F.3d 1355, 1358 (11th Cir. 2011) (quoting *United States v. Diaz*, 138 F.3d 1359, 1363 (11th Cir. 1998)). Of course, the court must actively participate in plea discussions *after* a plea agreement is disclosed. *See United States v. Crowell*, 60 F.3d 199, 203 (5th Cir. 1995). A district court may, for example, reject a plea agreement. Fed. R. Crim P. 11 (c)(5). In that case, the court is obligated to inform the defendant on the record and in open court that it rejects the plea agreement and state on the record the reasons for the rejection. *Id.* The court must take care, however, not to suggest what plea agreement would be acceptable, or entertain hypothetical agreements that might be acceptable. *See Crowell*, 60 F.3d at 203 (citing *United States v. Miles*, 10 F.3d 1135, 1139 (5th Cir. 1993)). Doing so would cause the court to impermissibly cross the line established by Rule 11 by becoming involved in the negotiations. *Id.*

Having carefully reviewed Nunez's arguments, the court finds that each lacks merit. Defendant's first three arguments can be dismissed because the court never formally rejected the 15-year plea agreement. Rather, the court merely notified the parties of its intent to do so through an email dated May 12, 2011. That email stated, in full, as follows:

16

Dear Counsel:

I have carefully reviewed the presentence report in the case referenced above and write to advise you that *I am reluctant to accept the plea agreement in this case.* Even if I accept Defendant's account of the amount of drugs, I find 11 kilograms each of crack and powder cocaine to be high amounts. He was a leader of a drug ring and was the chief cooker of the drugs.

The cache of firearms is alarming. The possession of a weapon enhancement is problematic. In all cases surveyed by this court, the basic determining element is the location of the gun vis-a-vis the drug activity. I want this issue briefed. (An order will be issue.)

In any event, for this court to accept the plea agreement that departs from the guideline, I must justify the departure with sufficient reasons. At this time, I can find no justification.

At an appropriate time, I will have the defendant brought into court to advise him of my decision not to accept the plea agreement and advise him of his alternatives.

Sincerely,

Judge Rambo

(Gov. Ex. 1) (emphasis added). On its face, the email merely states the court's reluctance to accept the plea agreement, and does not represent a formal rejection. Nor did Attorney Martino interpret the court's email as a formal rejection. At the 2255 hearing, the following exchange took place:

Q: [by AUSA Bloom] Now at the time of the August 15, 2011, hearing on those sentencing issues, had the Court at that time specifically rejected the 11(c)(1)(C) plea agreement for 15 years?

A: [By Attorney Martino] When the hearing commenced, my understanding is that he Court had not done that yet.

Q: And, in fact, in the communication, if you look at Government's Exhibit 1, in the communication from Judge Rambo, it indicates in the first line that, I have carefully

reviewed the pre-sentence report in the case referenced above and write to advise you that I am reluctant to accept the plea agreement in this case. Did you read that sentence as well?

A: I did read that sentence. Now we had a phone conference after this. And I think during the phone conversation, her Honor had decided to reject the plea agreement. My understanding from that conversation was that she was going to reject the plea agreement. But I do not believe she had rejected it as of August 15th.

(Tr. 55.) Attorney Martino further testified:

[T]he purpose of that hearing was, the hearing was conducted at Mr. Nunez's request, pretty much solely at his request. And the purpose of the hearing, my understanding of it, was to convince Her Honor to still accept the 15-year plea agreement. So I assumed that if we proceeded through the hearing, at that point then Her Honor would have advised Mr. Nunez of his obligations and his alternatives if she had rejected the plea.

(Tr. 47.) Likewise, the contents of a June 22, 2011 letter from Nunez to the court (Doc. 316) indicate that Nunez was not under the impression that the court had formally rejected the 15-year plea agreement. That letter, stated, in part, as follows:

Dear Judge Rambo,

I do not want to take but a moment of your time. My attorney has informed me that *you are inclined to reject* my 15-year plea agreement.

I am kindly requesting you would allow me to have a hearing on the drug amount, and the gun charges before doing so. Your honor, I am truly unaware as to why I am being charged with such large quantities of drugs. As for the two guns that the Agents found in a storage unit, I never ever carried a weapon in my life. I was under constant surveillance for several months, including a wiretap on my phone, and I can promise you that the Federal Agents that investigated me, nor any of the Government witnesses can say they ever saw me with a gun, heard me talk about a gun, or heard or saw me use a gun. I promise that I never used or carried a gun in my life, and I would never hurt anyone in such a fashion.

18

> *It would be greatly appreciated if you would allow an evidentiary hearing before you deny my 15-year sentence.*
>
> \*\*\*
>
> Please give me a chance, by granting a hearing, to prove to you that I do not deserve a sentence in excess of 15 years.
>
> I truly thank you for your time and attention regarding this matter.
>
> Sincerely,
> /s Edward J. Nunez

(Doc. 316) (emphasis added). From the face of the letter, it is clear that Nunez did not believe the 15-year plea agreement was formally rejected. The court granted his request for an evidentiary hearing as to drug weights, guns, and leadership role, which was scheduled for August 15, 2011. (Doc. 321.) At the 2255 hearing, Nunez testified as follows:

> Q: [by AUSA Bloom] Sir, at the point of the hearing that you had, at that point, you were aware that Judge Rambo had not rejected your 11(c)(1)(C) or 15-year plea agreement; correct?
>
> A: [by Nunez] Yes, I was aware of, but my lawyer told me that she was not going to take it or that she was not going to take it out.

(Tr. 86.)

Accordingly, at no point did the court formally reject the 15-year plea agreement, nor does it appear as though any party interpreted the court's actions as a formal rejection of the agreement. Rather, the court acquiesced to Nunez's request to refrain from deciding whether to accept the plea agreement until after the conclusion of the August 15, 2011 evidentiary hearing.

The court commenced, but never concluded, the evidentiary hearing because, during the course of the hearing, Nunez informed Attorney Martino that he

wanted to accept a 20-year plea agreement that was previously negotiated between the parties. (Doc. 416, Sentencing Hearing Transcript ("Sent. Hr'g Tr.") 22; Tr. 44, 64, 65.) The court suggested a recess to give Nunez and Attorney Martino an opportunity to discuss whether to accept the 20-year plea agreement. (Sent. Hr'g Tr. 23-24; Tr. 38, 44, 69.) During the recess, Attorney Martino and Nunez reviewed terms of the 20-year plea agreement, which were essentially identical to the terms of the 15-year plea agreement, with the exception of the term of imprisonment. (Tr. 67, 69.) Attorney Martino testified that Nunez understood the terms and was firm in his decision to accept the 20-year plea agreement, provided he was immediately sentenced that same day. (Tr. 68-70.) Once again, the court acquiesced to Nunez's wishes and sentenced him following the recess. (Sent. Hr'g Tr. 24-33.) During the sentencing, the court questioned Nunez regarding the terms of the 20-year plea agreement. (Sent. Hr'g Tr. 25-26.) Nunez stated that he understood the terms of the agreement, that there were no threats or promises made in connection with his acceptance of the agreement, that he was voluntarily agreeing to those terms, that he waived the right to appeal, and that he had no further questions regarding the 20-year plea agreement. (Sent. Hr'g Tr. 25-26.)

In short, by agreeing to accept the 20-year plea agreement prior to the conclusion of the evidentiary hearing, the court never had the opportunity to formally reject the 15-year plea agreement. Moreover, the record shows that neither Nunez nor Attorney Martino were under the impression that the court had ever formally rejected the 15-year agreement. Rather, both Nunez and his counsel were aware that the court was prepared to do so depending on the outcome of the evidentiary hearing. Having not yet rejected the 15-year plea agreement, the court

need not, and indeed could not, advise Defendant that the 15-year agreement was rejected (and the reasons for doing so). Similarly, there was no need to advise Nunez of his ability to withdraw his guilty plea in light of the court's rejection of the plea agreement for the exact same reason: no formal rejection of the plea agreement had yet occurred. Accordingly, there is no basis to find Attorney Martino's representation ineffective for his alleged failure to object to those Rule 11 violations because the court determines that no violations occurred in this regard.

Nunez's final argument with regard to Rule 11 is that trial counsel failed to object to the court's participation in plea discussions. Nunez argues that "while the intent of the telephone conference between the Court and counsel discussing an acceptable plea agreement to the Court was laudable, it was nevertheless in strict violation of Rule 11 . . . ." (Doc. 425, p. 17-18.) Nunez further argues that court's denial of his request for a continuance at the commencement of the August 15, 2011 evidentiary hearing, and the fact that he accepted a plea agreement in a federal courtroom, renders the voluntariness of his acceptance of the 20-year plea agreement dubious. The court rejects both arguments.

First, the court denies any insinuation that it suggested that a 20-year plea agreement would be acceptable. At the 2255 hearing, Attorney Martino testified regarding the June 28, 2011 conference call as follows:

> Q: [by Attorney Rymsza] How long was this conversation? Do you recall?
>
> A: [by Attorney Martino] It's been a while. I would say maybe 15 minutes. It might have been a little longer.
>
> Q: At the conclusion of the conversation, did you leave there with the understanding that the judge was inclined to accept the 15 years.

A: No.

Q: Was there any other time that was discussed, any other type of – strike that. You indicated that the objective was to find out what would be acceptable to the Court?

A: That was one of my objectives, yes.

Q: Did you get an answer to that?

A: I did.

Q: What was that?

A: I believe the Court at that point indicated Her Honor would accept a 20-year plea agreement.

(Tr. 42.)

Attorney Martino later testified as follows:

> I don't remember – I remember being very hesitant to ask what I did, but ultimately asking the Court what she would be comfortable with. And I remember Her Honor hesitating at my question because I know it was probably not the most appropriate question, but it was the basis for my phone call, and I remember Her Honor answering the question.

(Tr. 64.)

The court agrees with Nunez that Rule 11's strict prohibition of judicial involvement in plea negotiations would be violated if a court were to engage in a conference call to discuss the acceptability of hypothetical plea agreements. *See Crowell*, 60 F.3d at 203 (citing *United States v. Miles*, 10 F.3d 1135, 1139 (5th Cir. 1993)). However, this is not the court's recollection of the call. Although the court's specific recollection of this conference call is limited, having occurred more than a year and half ago, the court is nevertheless well aware of the strictures and limitations of Rule 11. As a matter of course, the court would not recommend to the parties what plea terms it might find acceptable. Moreover, the court's own minute

sheet from that call does not indicate that the court made any such recommendations. That minute sheet, which indicates that the call began at 3:30 p.m. and concluded at 3:40 p.m., states, in full:

> Advised that court will not accept current plea agreement. Counsel will renegotiate plea [and] if acceptable to def[endant] - set a date for court to advise def[endant] [and] take plea to new agreement. If [defendant] not accept revised plea agreement, advise def[endant] he can withdraw plea [and] go to trial or enter guilty plea [and] accept consequences w/o plea agreement.

(Doc. 320 (court only)).

Furthermore, the record shows that negotiations regarding a 20-year agreement were in the works well before the June 28, 2011 conference call. For example, on May 16, 2011, Attorney Martino emailed AUSA Bloom stating "I have spoken with [Nunez] a couple of times since I received Judge Rambo's email. I believe, although I am not completely sure, that he would take an 11(c)1(C) that offered a 20 year sentence. I assume that since you offered 15 years, you would be willing to offer this." (Gov. Ex. 2.) Additionally, Attorney Martino testified at the 2255 hearing as follows: "[I]t is certainly true that you [AUSA Bloom], I, and Mr. Nunez came up with the 20 years prior to having a discussion with Her Honor, but I don't know that we posed that to Judge Rambo in the phone call. I don't remember doing that." (Tr. 63-64.) Based on this evidence and the court's own recollection, the court rejects any assertion that the court recommended a 20-year plea agreement as being acceptable to the court.

Nor does the court find any technical violations of Rule 11. Certainly, the court plays some role in plea discussions; however it is critical that the court refrain from offering comments touching upon proposed plea agreement *prior* to any

23

agreement by the parties. *See Davila*, 664 F.3d at 1358; *see also United States v. Brown*, 595 F.3d 498, 521 (3d Cir. 2010). The purpose of this rule is to avoid a coerced plea from a defendant. As stated by the Third Circuit Court of Appeals in *Brown*, "Rule 11(c)(1) seeks to avoid a situation in which a court places pressure on a defendant to plead guilty involuntarily." 595 F.3d at 521. Here, Nunez had plead guilty on February 22, 2011, *prior* to any involvement by the court. Thus, no action by this court can be said to have contributed to a coerced guilty plea. The decision to plead guilty and accept the terms of a 20-year plea agreement was Nunez's alone.

Likewise, the court is not persuaded that the setting in which Nunez accepted the 20-year plea, namely a federal courthouse, somehow rendered his decision to accept the agreement coerced or involuntary. Once again, Nunez's decision to accept the 20-year agreement was his alone. Indeed, the court suggested a recess to allow Nunez and his attorney time to think it over and review the amended plea agreement outside the courtroom. Nunez testified at his 2255 hearing that he felt "pressured" when making his decision to accept the 20-year plea agreement. (Tr. 83.) The court appreciates that any defendant in that situation will likely feel such pressure. This alone, however, does not result in a Rule 11 violation. Nunez was permitted to take as much time as he needed to review the amended plea agreement. The same-day sentencing was performed at Nunez's insistence.[5] Accordingly, the speed and setting in which Nunez accepted the 20-year agreement, and any pressure felt as a result, did not amount to a Rule 11 violation.

---

[5] Regarding Nunez's request to be sentenced the same day, Attorney Martino testified: "That was part of his agreement to accept the 20 years actually. That was not something he was willing to budge on. It was conditional upon him pleading guilty that day. He wanted to be sentenced that day." (Tr. 64.)

### III.       Conclusion

In short, the record does not reveal any ground upon which the court can find that either Attorney Ulrich's or Attorney Martino's actions fell below an objective standard of reasonableness. Regarding the attempts to suppress the GPS evidence, any actions by trial counsel were strategically reasonable and, in any event, no decision by trial counsel prejudiced Nunez because even had the GPS evidence been suppressed, there was a significant amount of other evidence that would have supported his conviction. As to trial counsels' failure to object to the alleged Rule 11 violations, the court finds this argument lacks merit because the court did not commit any Rule 11 violations. The record demonstrates that no action by the court coerced Nunez to involuntarily plead guilty and accept the terms of the 20-year plea agreement. To the contrary, the court accommodated several of Nunez's requests, including holding an evidentiary hearing and acquiescing to a same day sentencing. Lastly, there is no indication that the court pre-approved, let alone suggested, any terms in the 20-year plea agreement. Accordingly, the court will deny Defendant's motion.

An appropriate order will be issued.

SYLVIA H. RAMBO
United States District Judge

Dated: January 25, 2013.

25

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :     **CRIM. NO. 1:10-CR-017-01**

       **v.**     :

**EDWARD JESUS-NUNEZ**     :

# O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED** that:

1.     Defendant's Motion to Vacate under 28 U.S.C. § 2255 (Doc. 398) and Supplemental Motion to Vacate under 28 U.S.C. § 2255 (Doc. 424) are **DENIED**.

2.     The court declines to issue a certificate of appealability.

3.     The Clerk of Court shall close the file.

SYLVIA H. RAMBO
United States District Judge

Dated: January   25, 2013.